IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DANNY TINDAL, ) | |
| ) | |
| ) | CIVIL ACTION NO. 0:04-22345-RBH-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| JO ANNE B. BARNHART ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The record reflects that Plaintiff applied for Disability Insurance Benefits (DIB) in August 2001, alleging disability as of January 1999 due to hernia disease, colon cancer and a respiratory disorder. (R.pp. 97-99, 105). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on January 6, 2004. (R.pp. 31-79). The ALJ thereafter denied Plaintiff's claim in a decision issued March 24, 2004. (R.pp. 12-21). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the



Commissioner. (R.pp. 5-7).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).



2

**Discussion**

A review of the record shows that Plaintiff, who was forty-eight (48) years old when he alleges he became disabled, has a tenth grade education with past relevant work experience as a carpenter and construction laborer. (R.pp. 97, 106, 111, 130, 144). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff is unable to perform his past relevant work, he nevertheless retains the residual functional capacity to perform a reduced range of light work,[1] and is therefore not disabled. (R.pp. 20-21).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly evaluating Plaintiff's credibility in deciding his limitations, by failing to properly evaluate Plaintiff's residual functional capacity in accordance with SSR 96-8p, and by failing to properly assess the opinions of Plaintiff's treating physicians. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



While Plaintiff's medical records confirm a history of having to undergo several abdominal hernia repairs, that he suffers from chronic obstructive pulmonary disease (COPD), and that he underwent surgery for colon cancer in 1994, the question before this Court is not whether Plaintiff has or is suffering from these impairments, but whether substantial evidence supports the ALJ's finding that Plaintiff's impairments are not of a disabling severity. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]. Here, the medical record with respect to Plaintiff's history of colon cancer shows that he was successfully treated for this condition, and that he is now cancer free. (R.pp. 163-165, 175, 180, 261, 319-320). As for Plaintiff's hernia surgeries, Plaintiff's medical records show that these operations were also generally successful and resulted in only short periods of time immediately following the surgeries when Plaintiff was unable to work. See generally, (R.pp. 165-168, 173-178, 232-235, 254-256, 324-325). Specifically, the record reflects that following abdominal hernia repair surgery in (apparently) the Spring of 2000, Dr. David Gibbs performed an examination on April 13, 2000, and noted that Plaintiff could be released to return to work by May 22, 2000. (R.p. 234). Following another hernia repair in December 2000, Dr. Gibbs opined that Plaintiff was doing well and that he would be unable to work for six weeks pending a follow-up examination. (R.p. 233). By February 16, 2001, there was no evidence of recurrent abdominal hernia, and even though Dr. Gibbs had asked Plaintiff to refrain from heavy lifting or exercise for a period of three months from the date of his surgery, he noted that Plaintiff was working



as a carpenter and framer, which required him to do some heavy lifting. [2] (R.p. 232). On September 21, 2001, Dr. Gibbs noted that Plaintiff had had no abdominal pain and that no abdominal treatment was indicated at that time. Id.

Records from Dr. Dean Page show that following hernia repair surgery in (apparently) June 2002, Plaintiff was seen by Dr. Page on July 6, 2002 who noted that Plaintiff's surgery had been successful. A follow-up examination on August 13, 2002 noted the absence of recurrence or abdominal tenderness. (R.pp. 254-255, 326). Additional follow-up examinations on October 30, 2002 and January 30, 2003 continued to show an intact repair and absence of any evidence of recurrence or abdominal tenderness. Plaintiff also denied experiencing any problems during this period. (R.pp. 324-325).

Finally, Plaintiff's history of COPD reflects that he was diagnosed with this condition by Dr. Miroslav Zotovic. (R.p. 173). Dr. Zotovic treated Plaintiff's condition with oxygen during sleep and with other medication, as well as repeatedly counseling Plaintiff against tobacco abuse. The record reflects that pulmonary function studies on December 21, 2001 revealed only a moderate restrictive pattern, while studies completed on January 24, 2001 were normal. (R.pp. 273, 275, 281-283). Pulmonary function studies on June 13, 2001 revealed a mild obstructive pattern and severely decreased diffusing capacity, while studies on February 6, 2002 were again normal. (R.pp. 267, 269, 274, 276-277). Pulmonary function studies completed on September 30, 2003 revealed a moderate restrictive pattern and mild obstructive disease. (R.p. 336). While Dr. Zotovic's records show that Plaintiff occasionally experienced some shortness of breath, they do not indicate a condition of

---

[2]Dr. Gibbs noted that this type of work coupled with Plaintiff's weight put him at high risk for recurrence of his hernia problems. (R.p. 232).



disabling severity, generally reflecting that Plaintiff had good oxygen saturation and that his COPD was either mild or under control. (R.pp. 263-264, 266-273). Nevertheless, notwithstanding these findings Dr. Zotovic issued a "to whom it may concern" letter on July 10, 2002 in which he opined that Plaintiff was "medically disabled due to his lung disease and post-surgical status." (R.p. 265).

Finally, the medical record contains two reports from state agency physicians. In a physical residual functional capacity assessment completed on December 6, 2001, Dr. William Crosby found based on a review of Plaintiff's medical records that he retained the residual functional capacity to lift fifty (50) pounds occasionally, twenty-five (25) pounds frequently, that he could stand and/or walk and sit six hours in an eight hour work day, push-pull within his lifting capacity, balance, stoop, kneel, crouch, and crawl frequently, climb occasionally, and perform work allowing avoidance of even moderate exposure to fumes, odors, dust, gases, poor ventilation, etc., and that he had no manipulative, visual, communicative, or other environmental limitations. (R.pp. 300-307). On November 1, 2002, a second state agency physician, Dr. George Chandler, concurred in Dr. Crosby's earlier findings. (R.pp. 291-298).

After review of these medical records and consideration of Plaintiff's subjective testimony; see (R.pp. 17-19); the ALJ found and concluded that Plaintiff retained the residual functional capacity to perform a limited range of light work subject to the following additional limitations: "he is to avoid all crawling, balancing, climbing of ropes, ladders and scaffolds and exposure to unprotected hazards and all exposure to pulmonary irritants, such as fumes, odors, dust and gases; and he is to avoid more than occasional stooping, kneeling, crouching and climbing of stairs or ramps." (R.p. 19). The records and opinions of Plaintiff's treating and examining physicians provide substantial evidence to support the residual functional capacity found by the ALJ; see



Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the state agency physicians. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

Plaintiff's argument that the ALJ failed to evaluate his residual functional capacity in compliance with SSR 96-8p, which requires a discussion describing how the evidence supports the ALJ's conclusion, is without merit. As noted, the ALJ referenced Dr. Gibbs' medical opinion concerning Plaintiff's physical capacity, as well as the medical records of Dr. Zotovic reflecting that Plaintiff's COPD was stable, specifically noting where a pulmonary functional capacity assessment completed by Dr. Zotovic in October 2003 was inconsistent with his own records and progress notes. (R.pp. 17-18). The undersigned does not find an reversible error in these findings. *Cf.* Buckholtz v. Barnhart, 98 Fed.Appx. 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002). The ALJ explained his decision to discount the opinion of disability of Dr. Zotovic, and there is substantial evidence in the record to support his decision to do so. Indeed, the undersigned notes that Dr. Zotovic's "to whom it may concern" letter of July 10, 2002, wherein he opines that Plaintiff is medically disabled due to his lung disease and post-surgical status, is sandwiched between two follow-up examinations of the Plaintiff conducted by Dr. Zotovic wherein he concluded on both occasions that Plaintiff's COPD was mild and under control. See



(R.pp. 264-266).³ The ALJ was not required to accept Dr. Zotovic's opinion of disability in light of the contrary medical evidence, including Dr. Zotovic's own treatment notes. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"].

The ALJ's decision also reflects that he discussed Plaintiff's hearing testimony and found that, although this testimony was "reasonably consistent with the weight of the medical evidence and was essentially credible; it simply failed to support a finding of disability." (R.p. 18). The ALJ noted that Plaintiff testified at the hearing that he became short of breath if he tries to walk more than two city blocks, and is only able to lift up to twenty-five (25) pounds. (R.p. 18). This testimony is not inconsistent with the residual functional capacity as found by the ALJ. (R.p. 19). The Commissioner further notes that Plaintiff testified he was able to engage in numerous daily activities such as driving an automobile, visiting people including checking on his mother, and generally taking care for his own personal needs. See (R.pp. 37-38, 42, 47, 145-147). Again, the undersigned does not find any reversible error in the ALJ's consideration of this evidence. See Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity

---

³Further, to the extent Dr. Zotovic's opinion of disability was based on Plaintiff's post-surgical status, as opposed to his lung disease, it is instructive to note that Plaintiff's hernia condition was being treated by Dr. Gibbs and Dr. Page, neither of whom ever opined that Plaintiff was disabled. To the contrary, Dr. Gibbs had only opined that Plaintiff should refrain from performing heavy lifting work. (R.p. 232). See 20 C.F.R. § 404.1527(d)(5) (2001) [opinion of a specialist about medical issues related to his or her area of specialty are entitled to more weight than the opinion of a physician who is not a specialist].



of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled].

Finally, the record reflects that the ALJ obtained vocational expert testimony at the hearing, where the vocational expert was proffered a hypothetical which reflected the residual functional capacity found to exist by the Plaintiff. (R.pp. 68-69). In response to this hypothetical, the vocational expert identified several jobs which Plaintiff could perform with his limitations, considering his age and educational background. (R.p. 69). While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable caselaw. Hence, the hypothetical given by the ALJ to the vocational expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d 687, 694 (4th Cir. 1991); see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

## Conclusion

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.



Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

November 30, 2005